34TH JUDICIAL DISTRICT COURT FOR THE PARISH OF SAINT BERNARD

STATE OF LOUISIANA

NO.   1 7 - 0 7 3 1          DIVISION " "                    SECTION

JUDITH PUNCH RIVERA, statutory heir of Dolores Punch

VERSUS

HUNTINGTON INGALLS INC. F/K/A Northrop Grumman Ship Systems, Inc. F/K/A
Avondale Industries, Inc.; EAGLE INC.; THE MCCARTY CORP.; CROWN, CORK &
SEAL USA, INC.; AMEC FOSTER WHEELER CONSTRUCTORS, INC. F/K/A Foster
Wheeler Inc. F/K/A Foster Wheeler Corp.; ARROWOOD INDEMNITY COMPANY;
REILLY-BENTON COMPANY, INC.; and OWENS-ILLINOIS INC.

FILED    JUN 0 8 2017                    _Randy S. Nunez_
                                         DEPUTY CLERK

## PETITION FOR DAMAGES

Plaintiff, JUDITH PUNCH RIVERA, through her attorneys, file this Original Petition
for Damages:

1.

Parties

A. *The Plaintiff is:*

i.    JUDITH PUNCH RIVERA, a major residing at 4708 Gary Mikel Ave., Metairie,
Louisiana.

B. *The Defendants are:*

i.    HUNTINGTON INGALLS INC. F/K/A Northrop Grumman Ship Systems, Inc. F/K/A
Avondale Industries, Inc. (hereinafter "Avondale") is a foreign corporation incorporated in
Virginia with its principal office in Virginia, and whose agent for service of process is CT
Corporation System, 3867 Plaza Tower Dr., Baton Rouge, Louisiana 70816;

ii.   EAGLE INC. is a domestic corporation with its principal place of business in New
Orleans, Louisiana and whose agent for service of process is Susan B. Kohn, 1100 Poydras St.,
30th Floor, New Orleans, Louisiana 70163;

iii.  THE MCCARTY CORP. is a domestic corporation with its principal place of business
in Baton Rouge, Louisiana, and whose agent for service of process is Paul H. Spaht, 4232
Bluebonnet Blvd., Baton Rouge, Louisiana 70809;

1



iv.    **CROWN, CORK & SEAL USA, INC.** is a foreign corporation incorporated in Delaware with its principal office in Philadelphia, and whose agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware, 19801;

v.    **AMEC FOSTER WHEELER CONSTRUCTORS, INC.** F/K/A Foster Wheeler Inc. F/K/A Foster Wheeler Corp. (hereinafter "Foster Wheeler") is a foreign corporation incorporated in Delaware with its principal office in New Jersey, and whose agent for service of process is CT Corporation System, 3867 Plaza Tower Dr., Baton Rouge, Louisiana 70816;

vi.    **ARROWOOD INDEMNITY COMPANY** is a foreign insurance corporation incorporated in Delaware with its principal office in North Carolina, and whose agent for service of process is the Louisiana Secretary of State, 8585 Archives Ave., Baton Rouge, Louisiana 70809;

vii.    **REILLY-BENTON COMPANY, INC.** is a domestic corporation with its principal place of business in New Orleans, Louisiana, and whose agent for service of process is Thomas L. Cougill C/O Willingham Fultz & Cougill, LLP, 8550 United Plaza Blvd., Ste. 702, Baton Rouge, Louisiana 70809; and

viii.    **OWENS-ILLINOIS, INC.,** is a foreign corporation incorporated in Ohio with its principal office in Ohio, and whose agent for service of process is Owens-Illinois, Inc., One Michael Owens Way, Perrysburg, Ohio, 43551.

## 2.

### Jurisdiction and Venue

Plaintiff specifically alleges that exposure to asbestos and asbestos containing products, caused her mother's, Dolores Punch, asbestos-related injuries including malignant mesothelioma. Thus, venue is proper for these defendants and is proper for all defendants pursuant to Louisiana Code of Civil Procedure Articles 42(2) and 73. Defendants, Crown, Cork & Seal USA Inc., Foster Wheeler, Reilly-Benton and Owens-Illinois activities occurred in St. Bernard Parish at Kaiser Aluminum and Chemical in Chalmette, Louisiana. Defendant, Eagle Inc. is a domestic corporation with it's principal places of business located in New Orleans, Louisiana. Defendant, Reilly-Benton Co., Inc. is a domestic corporation with it's principal business establishment in

New Orleans, Louisiana. Plaintiff's mother was exposed daily to asbestos, distributed, manufactured, sold, and installed by the above-referenced defendants in Orleans Parish. Plaintiff specifically alleges that these products caused mesothelioma. Thus, venue is proper for these defendants and is proper for all defendants pursuant to Louisiana Code of Civil Procedure Articles 42(2) and 73.

### 3.

### Background

Judith Rivera was the daughter of Dolores Punch at the time of her death. Judith Rivera is the statutory heir and survivor of Dolores Punch, deceased, and they hereby assert a survival claim against the defendants for all damages for injury to Dolores Punch, her property, and otherwise. She further hereby assert a wrongful death claim against the defendants for the death of Dolores Punch.

### 4.

Dolores Punch received a diagnosis of adenocarcinoma on May 25, 2010. Mrs. Punch received a final diagnosis of malignant mesothelioma, a terminal cancer of the tissue that surrounds the internal organs of the body, on July, 15, 2011, which lead to her death on August 15, 2011. Her malignant mesothelioma was caused by exposure to asbestos, a toxic mineral fiber, from her husband Richard Punch Sr.'s clothes which he wore to work at the times and locations named in this petition. After Richard Punch Sr. returned home from work Dolores Punch would breathe asbestos dust from her husband's clothes when she laundered them and otherwise came into contact with them.

### 5.

Mr. Punch worked at Avondale from approximately 1948 through 1960. He worked at Kaiser Aluminum from approximately 1961 through retirement in 1967. He worked as a pipefitter and welder.

### 6.

Dolores Punch was exposed to asbestos through her husband's work as a pipefitter and welder at Avondale in New Orleans, Louisiana.

### 7.

Dolores Punch was exposed to asbestos through her husband's work as a pipefitter and welder at Kaiser Aluminum and Chemical in Chalmette, Louisiana.

8.

Eagle Inc. and its predecessors in interest were contractors at Avondale. From approximately 1948 through 1960, Dolores Punch was exposed to asbestos through her husband Richard Punch Sr.'s work as a pipefitter and welder at Avondale around, and by the acts and omissions of, the employees of Eagle Inc.

9.

The McCarty Corp. and its predecessors in interest were contractors at Avondale. From approximately 1948 through 1960, Dolores Punch was exposed to asbestos through her husband Richard Punch Sr.'s work as a pipefitter and welder at Avondale around, and by the acts and omissions of, the employees of The McCarty Corp.

10.

Crown, Cork & Seal USA, Inc. and its predecessors in interest were insulation contractors at Kaiser Aluminum and Chemical in Chalmette, Louisiana. From approximately 1961 through 1967, Dolores Punch was exposed to asbestos through her husband Richard Punch Sr.'s work as a pipefitter and welder at Kaiser Aluminum around, and by the acts and omissions of, the employees of Crown, Cork & Seal USA, Inc.

11.

Foster Wheeler and its predecessors in interest manufactured asbestos containing boilers that were installed and used at the Kaiser Aluminum and Chemical in Chalmette, Louisiana. From approximately 1961 through 1967, Dolores Punch was exposed to asbestos through her husband Richard Punch Sr.'s work as a pipefitter and welder at Kaiser Aluminum around, and by the acts and omissions of, the employees of Foster Wheeler.

12.

Aber Insulation was an insulation contractor at Kaiser Aluminum and Chemical in Chalmette, Louisiana. Aber Insulation is no longer in business. Arrowood Indemnity Company was the insurer of Aber Insulation from 1954 through 1965. From approximately 1961 through 1967, Dolores Punch was exposed to asbestos through her husband Richard Punch

4

Sr.'s work as a pipefitter and welder at Kaiser Aluminum around, and by the acts and omissions of, the employees of Aber Insulation.

### 13.

Reilly-Benton and its predecessors in interest were suppliers of asbestos insulation and other asbestos containing materials to Kaiser Aluminum and Chemical in Chalmette, Louisiana. From approximately 1961 through 1961, Dolores Punch was exposed to asbestos through her husband Richard Punch Sr.'s work as a pipefitter and welder at Kaiser Aluminum around, and by the acts and omissions of, the employees of Reilly-Benton.

### 14.

Owens-Illinois, Inc. and its predecessors in interest were insulation contractors, sellers, and distributors of Kaylo (asbestos insulation) at Kaiser Aluminum and Chemical in Chalmette, Louisiana. From approximately 1961 through 1967, Dolores Punch was exposed to asbestos through her husband Richard Punch Sr.'s work as a pipefitter and welder at Kaiser Aluminum around, and by the acts and omissions of, the employees of Owens-Illinois.

### 15.

The defendants are obligated in solido, jointly and severally, to the plaintiff, under strict liability and negligence, for their acts and omissions that caused Dolores Punch's malignant mesothelioma. The defendants' acts and omissions caused Dolores Punch to be exposed to asbestos fibers in the air, which she breathed. Richard Punch Sr. removed, applied, handled, worked in the immediate vicinity of other workers who removed, applied, and handled, and/or was otherwise exposed to, asbestos-containing products or materials, which released asbestos fibers and dust into the atmosphere. These airborne asbestos fibers and dust particles ultimately settled or were deposited on the work clothes or person of Richard Punch Sr.. Dolores Punch, on a daily basis, shook out and laundered those clothes in their home.

Additionally, the asbestos fibers and particles on Richard Punch Sr.'s person, personal belongings, and clothing were carried into the residence, thereby further exposing Dolores Punch to asbestos fibers and particles through inhalation and ingestion. Once inside her body and after a long latency period, the toxic effect of the asbestos fibers manifested as malignant mesothelioma. The plaintiff did not know, and could not have known, that the defendants injured Dolores

Punch.

### 16.

The premises defendant, **Avondale**, is obligated to the plaintiff for their acts and omissions that caused the plaintiff to be exposed to asbestos from their land and from their buildings, including but not limited to: the removal, repair, handling, and/or disposal of pipes and equipment with asbestos-containing insulation, gaskets, packing, and other materials. Further, **Avondale** and contractor defendants had garde of these asbestos-containing products that exposed Dolores Punch, which products were unreasonably dangerous and presented an unreasonable risk of harm.

### 17.

The defendants failed to warn Richard Punch Sr. of the inherent dangers in the use of asbestos. The defendants failed to provide necessary protection for the benefit of Dolores Punch. The defendants failed to warn against bringing home asbestos-containing clothes for laundering and failed to provide special work clothes that could be removed at the end of the day, which would not require home laundering. The defendants failed to provide clean, respirable air and proper ventilation for the benefit of the plaintiff. The defendants failed to provide adequate engineering controls to eliminate or substantially reduce exposure to asbestos. The defendants failed to use asbestos-free insulation and other building products. The defendants failed to provide showers and protective clothing for the benefit of the plaintiff. The defendants disregarded safety in the storage, handling, and transportation of asbestos-containing products. The defendants failed to segregate work areas so that Richard Punch Sr. would not be exposed to asbestos. The defendants failed to provide necessary and adequate respiratory protections. The defendants failed to inform Richard Punch Sr. and Dolores Punch that they were being exposed to asbestos. The defendants failed to inform Richard Punch Sr. and Dolores Punch that asbestos exposure could cause mesothelioma. The defendants knew that injury to the plaintiff was substantially certain to follow.

### 18.

The product defendants, **Crown, Cork & Seal USA Inc., Foster Wheeler, Arrowood Indemnity Company, Reilly-Benton, and Owens-Illinois**, are obligated to the plaintiff because

their defective products exposed Dolores Punch to asbestos. The product defendants were in the business of processing, mining, making, designing, manufacturing, producing, compounding, marketing, selling, supplying, distributing, installing, removing, and/or placing in the stream of commerce asbestos-containing products, and these defendants did in fact process, mine, make, design, manufacture, produce, compound, market, sell, supply, distribute, install, remove, and/or place in the stream of commerce asbestos-containing products. There was no substantial change to those asbestos-containing products from the time they left the possession of these defendants until they reached Dolores Punch. There was a safer and practical alternative design that these defendants could have used at the time the asbestos-containing products were processed, mined, made, designed, manufactured, produced, compounded, marketed, sold, supplied, distributed, installed, removed, and/or placed in the stream of commerce.

19.

Likewise, the product defendants, Crown, Cork & Seal USA Inc., Foster Wheeler, Arrowood Indemnity Company, Reilly-Benton, and Owens-Illinoi, are obligated to the plaintiff for failing to warn Dolores Punch of the dangers of asbestos in their defective products. These defendants' asbestos- containing products were dangerous when used as intended because they exposed Dolores Punch to asbestos. These defendants knew or should have known that their asbestos-containing products could create danger when used as intended in their customary manner. These defendants did not give an adequate warning about the danger to persons likely to be injured by the product, such as the plaintiff.

20.

All defendants were aware, or should have been aware, of the dangers of asbestos prior to the times when the plaintiff was exposed. In 1928, F. W. Simson, M.D., published a landmark study in the British Medical Journal regarding asbestosis in South African asbestos mine workers in 1930, E. R A. Merewether, M.D., authored the "Report on Effects of Asbestos Dust on the Lungs and Dust Suppression in the Asbestos Industry," which was published by the United Kingdom's government printing office. This now-historic report thoroughly and publicly documented the health hazards caused by exposure to asbestos.

21.

In 1936, the United States Congress passed the Walsh-Healey Public Contracts Act, which covered certain contracts in excess of $10,000 with the United States government for the manufacture or furnishing of materials, supplies, articles, or equipment. The Walsh-Healey Act required, among other things, that working conditions met certain standards where the government contracts were performed. For instance, the Act prohibited working conditions that were "unsanitary, hazardous, or dangerous to the health and safety of employees engaged in the performance of the contract." The safety standards under the Walsh-Healey Act would have applied to the industrial premises named in this petition.

22.

In 1938, the United States Treasury Department publicly issued a 126-page health bulletin that summarized the health risks posed to workers in the asbestos textile industry. At the very beginning of the publication, the report noted that when asbestos is inhaled daily, year in and year out, a lung disease termed "asbestosis" may develop.

23.

Beginning in the late 1940s and continuing into the 1950s, the American Conference of Government Industrial Hygienists published numerous papers containing maximum air concentrations for dust, including asbestos dust. In 1956, the ACGIH published the first requirements for "threshold limit values," the levels at which workers can be exposed to contaminants on a daily basis, over a working career, without experiencing adverse health effects. These publications included asbestos as a potential toxic dust.

24.

By no later than the 1940s and early 1950s, the dangers of high exposures to asbestos, even in short duration, were well-documented and well-accepted. By 1952, the Louisiana Legislature had added asbestosis to the list of compensable occupational diseases under the Louisiana Worker's Compensation Act, codified in Louisiana Revised Statutes 23:1031.1(A) (1952).

25.

The causal connection between asbestos and lung cancer was well-documented by the 1950s at the very latest. In 1955, Richard Doll, M.D., published a landmark study in the British Journal of Industrial Medicine that established a causal link between asbestos exposure and lung

8

cancer to the satisfaction of even skeptical medical scientists and further noted the long latency period of the asbestos-related disease. *His* studies laid the foundation for further studies that explored the connection between asbestos exposure and lung cancer, including the monumental studies by the American medical researcher Irving J. Selikoff, M.D., published in 1964 and 1965.

### 26.

The causal connection between asbestos and mesothelioma was well-documented by the 1960s at the very latest. Between 1959 and 1962, J. C. Wagner, M.D., presented findings and authored publications that linked asbestos exposure to mesothelioma in South Africa. By 1964 and 1965, articles in prominent American and British medical journals resulted in the general medical recognition that mesothelioma was an asbestos-related disease. Finally, Dr. Selikoff's publication entitled "Biological Effects of Asbestos" in the Annals of the New York Academy of Sciences in 1965 provided perhaps the most compelling and irrefutable evidence at that time of the dangers of asbestos exposure.

### 27.

As a proximate result of the defendants' acts and omissions, Dolores Punch was caused to have mesothelioma, a deadly cancer. She was caused to suffer physical pain and mental anguish. She was caused to seek medical treatment and prevented from going about her normal activities. She was caused to incur medical and hospital expenses to treat her injuries.

### 28.

#### Contra Non Valentum

#### a.

The prescriptive period does not start until the plaintiff knew or should have known that Dolores Punch's mesothelioma was caused by asbestos. Here, the results of Dolores Punch's exposure to asbestos was inherently undiscoverable. The cancer took years to develop.

Dolores Punch was diagnosed with adenocarcinoma on May 25, 2010 and again on June 30, 2011. She was diagnosed with mesothelioma on July 15, 2011 and died on August 15, 2011. Judith Punch did not learn of a possible causal connection between the asbestos and mesothelioma until May 17, 2017. The limitation period didn't start until after May 17, 2017, when the plaintiff learned about the cause of her mother's death. The defendants concealed and

misrepresented the health hazards of asbestos from the plaintiff which led her to a course of inaction in the enforcement of her rights by reason of some concealment or fraudulent conduct on the part of the defendants or because of the failure to perform some legal duty whereby plaintiff has been kept in ignorance of her rights.

Plaintiff was never informed that Dolores Punch was diagnosed with mesothelioma and did not know what asbestos was, or that asbestos caused mesothelioma prior to May 17, 2017. On or about May 17, 2017, Plaintiff saw an advertisement for mesothelioma caused by asbestos. Prior to May 17, 2017 Plaintiff had never seen an advertisement for mesothelioma. Plaintiff did not know that her father's work exposed him and her mother to asbestos. Plaintiff could not know Dolores Punch was exposed to asbestos prior to May 17, 2017.

### b.

Because of the latency period of the above injuries and other injuries caused by asbestos and asbestos-containing products the *Plaintiff has only recently discovered that* Dolores Punch's injuries were causally related to exposure to asbestos which occurred between 1948 through 1967 while her husband, Richard Punch Sr., worked at Avondale and Kaiser Aluminum.

### Damages

### 29.

As a proximate result of the defendants' acts and omissions, Judith Rivera was caused to lose the love and affection of her mother, Dolores Punch. She further suffered loss of companionship and moral support, loss of her mother's decreased ability to perform household services, loss of aid and assistance in the family unit, and a loss of happiness and contentment in their relationship. She also endured substantial anguish and grief in watching her mother suffer from an excruciatingly painful and disabling disease, and death, and she is entitled to damages for this mental pain and suffering.

### 30.

The plaintiff is entitled to damages, for Dolores Punch, in excess of $50,000, for the following:

a.   Past physical and mental pain and suffering, and emotional distress for Dolores Punch's mesothelioma;

b.   Fear of dying, which she has endured since the time of her diagnosis until death;

34TH JUDICIAL DISTRICT COURT FOR THE PARISH OF SAINT BERNARD

STATE OF LOUISIANA

NO.   1 7 - 0 7 3 1        DIVISION " "                    SECTION

JUDITH PUNCH RIVERA, statutory heir of Dolores Punch

VERSUS

HUNTINGTON INGALLS INC. F/K/A Northrop Grumman Ship Systems, Inc. F/K/A
Avondale Industries, Inc.; EAGLE INC.; THE MCCARTY CORP.; CROWN, CORK &
SEAL USA, INC.; AMEC FOSTER WHEELER CONSTRUCTORS, INC. F/K/A Foster
Wheeler Inc. F/K/A Foster Wheeler Corp.; ARROWOOD INDEMNITY COMPANY;
REILLY-BENTON COMPANY, INC.; and OWENS-ILLINOIS INC.

FILED ____ JUN 0 8 2017 _____    _Randy S. Nunez_
                                         DEPUTY CLERK

PETITION FOR DAMAGES

Plaintiff, JUDITH PUNCH RIVERA, through her attorneys, file this Original Petition

for Damages:

1.

Parties

A. *The Plaintiff is:*

i.    JUDITH PUNCH RIVERA, a major residing at 4708 Gary Mikel Ave., Metairie,

Louisiana.

B. *The Defendants are:*

i.    HUNTINGTON INGALLS INC. F/K/A Northrop Grumman Ship Systems, Inc. F/K/A

Avondale Industries, Inc. (hereinafter "Avondale") is a foreign corporation incorporated in

Virginia with its principal office in Virginia, and whose agent for service of process is CT

Corporation System, 3867 Plaza Tower Dr., Baton Rouge, Louisiana 70816;

ii.   EAGLE INC. is a domestic corporation with its principal place of business in New

Orleans, Louisiana and whose agent for service of process is Susan B. Kohn, 1100 Poydras St.,

30th Floor, New Orleans, Louisiana 70163;

iii.  THE MCCARTY CORP. is a domestic corporation with its principal place of business

in Baton Rouge, Louisiana, and whose agent for service of process is Paul H. Spaht, 4232

Bluebonnet Blvd., Baton Rouge, Louisiana 70809;

1


EXHIBIT
A

iv.     **CROWN, CORK & SEAL USA, INC.** is a foreign corporation incorporated in Delaware with its principal office in Philadelphia, and whose agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware, 19801;

v.      **AMEC FOSTER WHEELER CONSTRUCTORS, INC.** F/K/A Foster Wheeler Inc. F/K/A Foster Wheeler Corp. (hereinafter "Foster Wheeler") is a foreign corporation incorporated in Delaware with its principal office in New Jersey, and whose agent for service of process is CT Corporation System, 3867 Plaza Tower Dr., Baton Rouge, Louisiana 70816;

vi.     **ARROWOOD INDEMNITY COMPANY** is a foreign insurance corporation incorporated in Delaware with its principal office in North Carolina, and whose agent for service of process is the Louisiana Secretary of State, 8585 Archives Ave., Baton Rouge, Louisiana 70809;

vii.    **REILLY-BENTON COMPANY, INC.** is a domestic corporation with its principal place of business in New Orleans, Louisiana, and whose agent for service of process is Thomas L. Cougill C/O Willingham Fultz & Cougill, LLP, 8550 United Plaza Blvd., Ste. 702, Baton Rouge, Louisiana 70809; and

viii.   **OWENS-ILLINOIS, INC.,** is a foreign corporation incorporated in Ohio with its principal office in Ohio, and whose agent for service of process is Owens-Illinois, Inc., One Michael Owens Way, Perrysburg, Ohio, 43551.

## 2.

### Jurisdiction and Venue

Plaintiff specifically alleges that exposure to asbestos and asbestos containing products, caused her mother's, Dolores Punch, asbestos-related injuries including malignant mesothelioma. Thus, venue is proper for these defendants and is proper for all defendants pursuant to Louisiana Code of Civil Procedure Articles 42(2) and 73. Defendants, **Crown, Cork & Seal USA Inc., Foster Wheeler, Reilly-Benton** and **Owens-Illinois** activities occurred in St. Bernard Parish at Kaiser Aluminum and Chemical in Chalmette, Louisiana. Defendant, **Eagle Inc.** is a domestic corporation with it's principal places of business located in New Orleans, Louisiana. Defendant, **Reilly-Benton Co., Inc.** is a domestic corporation with it's principal business establishment in

2

New Orleans, Louisiana. Plaintiff's mother was exposed daily to asbestos, distributed, manufactured, sold, and installed by the above-referenced defendants in Orleans Parish. Plaintiff specifically alleges that these products caused mesothelioma. Thus, venue is proper for these defendants and is proper for all defendants pursuant to Louisiana Code of Civil Procedure Articles 42(2) and 73.

3.

## Background

Judith Rivera was the daughter of Dolores Punch at the time of her death. Judith Rivera is the statutory heir and survivor of Dolores Punch, deceased, and they hereby assert a survival claim against the defendants for all damages for injury to Dolores Punch, her property, and otherwise. She further hereby assert a wrongful death claim against the defendants for the death of Dolores Punch.

4.

Dolores Punch received a diagnosis of adenocarcinoma on May 25, 2010. Mrs. Punch received a final diagnosis of malignant mesothelioma, a terminal cancer of the tissue that surrounds the internal organs of the body, on July, 15, 2011, which lead to her death on August 15, 2011. Her malignant mesothelioma was caused by exposure to asbestos, a toxic mineral fiber, from her husband Richard Punch Sr.'s clothes which he wore to work at the times and locations named in this petition. After Richard Punch Sr. returned home from work Dolores Punch would breathe asbestos dust from her husband's clothes when she laundered them and otherwise came into contact with them.

5.

Mr. Punch worked at Avondale from approximately 1948 through 1960. He worked at Kaiser Aluminum from approximately 1961 through retirement in 1967. He worked as a pipefitter and welder.

6.

Dolores Punch was exposed to asbestos through her husband's work as a pipefitter and welder at Avondale in New Orleans, Louisiana.

7.

3

Dolores Punch was exposed to asbestos through her husband's work as a pipefitter and welder at Kaiser Aluminum and Chemical in Chalmette, Louisiana.

8.

Eagle Inc. and its predecessors in interest were contractors at **Avondale.** From approximately 1948 through 1960, Dolores Punch was exposed to asbestos through her husband Richard Punch Sr.'s work as a pipefitter and welder at **Avondale** around, and by the acts and omissions of, the employees of **Eagle Inc.**

9.

The McCarty Corp. and its predecessors in interest were contractors at **Avondale.** From approximately 1948 through 1960, Dolores Punch was exposed to asbestos through her husband Richard Punch Sr.'s work as a pipefitter and welder at **Avondale** around, and by the acts and omissions of, the employees of **The McCarty Corp.**

10.

Crown, Cork & Seal USA, Inc. and its predecessors in interest were insulation contractors at Kaiser Aluminum and Chemical in Chalmette, Louisiana. From approximately 1961 through 1967, Dolores Punch was exposed to asbestos through her husband Richard Punch Sr.'s work as a pipefitter and welder at Kaiser Aluminum around, and by the acts and omissions of, the employees of **Crown, Cork & Seal USA, Inc.**

11.

Foster Wheeler and its predecessors in interest manufactured asbestos containing boilers that were installed and used at the Kaiser Aluminum and Chemical in Chalmette, Louisiana. From approximately 1961 through 1967, Dolores Punch was exposed to asbestos through her husband Richard Punch Sr.'s work as a pipefitter and welder at Kaiser Aluminum around, and by the acts and omissions of, the employees of **Foster Wheeler.**

12.

Aber Insulation was an insulation contractor at Kaiser Aluminum and Chemical in Chalmette, Louisiana. Aber Insulation is no longer in business. **Arrowood Indemnity Company** was the insurer of Aber Insulation from 1954 through 1965. From approximately 1961 through 1967, Dolores Punch was exposed to asbestos through her husband Richard Punch

4

Sr.'s work as a pipefitter and welder at Kaiser Aluminum around, and by the acts and omissions of, the employees of Aber Insulation.

13.

Reilly-Benton and its predecessors in interest were suppliers of asbestos insulation and other asbestos containing materials to Kaiser Aluminum and Chemical in Chalmette, Louisiana. From approximately 1961 through 1961, Dolores Punch was exposed to asbestos through her husband Richard Punch Sr.'s work as a pipefitter and welder at Kaiser Aluminum around, and by the acts and omissions of, the employees of Reilly-Benton.

14.

Owens-Illinois, Inc. and its predecessors in interest were insulation contractors, sellers, and distributors of Kaylo (asbestos insulation) at Kaiser Aluminum and Chemical in Chalmette, Louisiana. From approximately 1961 through 1967, Dolores Punch was exposed to asbestos through her husband Richard Punch Sr.'s work as a pipefitter and welder at Kaiser Aluminum around, and by the acts and omissions of, the employees of Owens-Illinois.

15.

The defendants are obligated in solido, jointly and severally, to the plaintiff, under strict liability and negligence, for their acts and omissions that caused Dolores Punch's malignant mesothelioma. The defendants' acts and omissions caused Dolores Punch to be exposed to asbestos fibers in the air, which she breathed.  Richard Punch Sr. removed, applied, handled, worked in the immediate vicinity of other workers who removed, applied, and handled, and/or was otherwise exposed to, asbestos-containing products or materials, which released asbestos fibers and dust into the atmosphere. These airborne asbestos fibers and dust particles ultimately settled or were deposited on the work clothes or person of Richard Punch Sr.. Dolores Punch, on a daily basis, shook out and laundered those clothes in their home.

Additionally, the asbestos fibers and particles on Richard Punch Sr.'s person, personal belongings, and clothing were carried into the residence, thereby further exposing Dolores Punch to asbestos fibers and particles through inhalation and ingestion. Once inside her body and after a long latency period, the toxic effect of the asbestos fibers manifested as malignant mesothelioma. The plaintiff did not know, and could not have known, that the defendants injured Dolores

Punch.

### 16.

The premises defendant, Avondale, is obligated to the plaintiff for their acts and omissions that caused the plaintiff to be exposed to asbestos from their land and from their buildings, including but not limited to: the removal, repair, handling, and/or disposal of pipes and equipment with asbestos-containing insulation, gaskets, packing, and other materials. Further, Avondale and contractor defendants had garde of these asbestos-containing products that exposed Dolores Punch, which products were unreasonably dangerous and presented an unreasonable risk of harm.

### 17.

The defendants failed to warn Richard Punch Sr. of the inherent dangers in the use of asbestos. The defendants failed to provide necessary protection for the benefit of Dolores Punch. The defendants failed to warn against bringing home asbestos-containing clothes for laundering and failed to provide special work clothes that could be removed at the end of the day, which would not require home laundering. The defendants failed to provide clean, respirable air and proper ventilation for the benefit of the plaintiff. The defendants failed to provide adequate engineering controls to eliminate or substantially reduce exposure to asbestos. The defendants failed to use asbestos-free insulation and other building products. The defendants failed to provide showers and protective clothing for the benefit of the plaintiff. The defendants disregarded safety in the storage, handling, and transportation of asbestos-containing products. The defendants failed to segregate work areas so that Richard Punch Sr. would not be exposed to asbestos. The defendants failed to provide necessary and adequate respiratory protections. The defendants failed to inform Richard Punch Sr. and Dolores Punch that they were being exposed to asbestos. The defendants failed to inform Richard Punch Sr. and Dolores Punch that asbestos exposure could cause mesothelioma. The defendants knew that injury to the plaintiff was substantially certain to follow.

### 18.

The product defendants, Crown, Cork & Seal USA Inc., Foster Wheeler, Arrowood Indemnity Company, Reilly-Benton, and Owens-Illinois, are obligated to the plaintiff because

their defective products exposed Dolores Punch to asbestos. The product defendants were in the business of processing, mining, making, designing, manufacturing, producing, compounding, marketing, selling, supplying, distributing, installing, removing, and/or placing in the stream of commerce asbestos-containing products, and these defendants did in fact process, mine, make, design, manufacture, produce, compound, market, sell, supply, distribute, install, remove, and/or place in the stream of commerce asbestos-containing products. There was no substantial change to those asbestos-containing products from the time they left the possession of these defendants until they reached Dolores Punch. There was a safer and practical alternative design that these defendants could have used at the time the asbestos-containing products were processed, mined, made, designed, manufactured, produced, compounded, marketed, sold, supplied, distributed, installed, removed, and/or placed in the stream of commerce.

19.

Likewise, the product defendants, Crown, Cork & Seal USA Inc., Foster Wheeler, Arrowood Indemnity Company, Reilly-Benton, and Owens-Illinoi, are obligated to the plaintiff for failing to warn Dolores Punch of the dangers of asbestos in their defective products. These defendants' asbestos-containing products were dangerous when used as intended because they exposed Dolores Punch to asbestos. These defendants knew or should have known that their asbestos-containing products could create danger when used as intended in their customary manner. These defendants did not give an adequate warning about the danger to persons likely to be injured by the product, such as the plaintiff.

20.

All defendants were aware, or should have been aware, of the dangers of asbestos prior to the times when the plaintiff was exposed. In 1928, F. W. Simson, M.D., published a landmark study in the British Medical Journal regarding asbestosis in South African asbestos mine workers in 1930, E. R A. Merewether, M.D., authored the "Report on Effects of Asbestos Dust on the Lungs and Dust Suppression in the Asbestos Industry," which was published by the United Kingdom's government printing office. This now-historic report thoroughly and publicly documented the health hazards caused by exposure to asbestos.

21.

7

In 1936, the United States Congress passed the Walsh-Healey Public Contracts Act, which covered certain contracts in excess of $10,000 with the United States government for the manufacture or furnishing of materials, supplies, articles, or equipment. The Walsh-Healey Act required, among other things, that working conditions met certain standards where the government contracts were performed. For instance, the Act prohibited working conditions that were "unsanitary, hazardous, or dangerous to the health and safety of employees engaged in the performance of the contract." The safety standards under the Walsh-Healey Act would have applied to the industrial premises named in this petition.

22.

In 1938, the United States Treasury Department publicly issued a 126-page health bulletin that summarized the health risks posed to workers in the asbestos textile industry. At the very beginning of the publication, the report noted that when asbestos is inhaled daily, year in and year out, a lung disease termed "asbestosis" may develop.

23.

Beginning in the late 1940s and continuing into the 1950s, the American Conference of Government Industrial Hygienists published numerous papers containing maximum air concentrations for dust, including asbestos dust. In 1956, the ACGIH published the first requirements for "threshold limit values," the levels at which workers can be exposed to contaminants on a daily basis, over a working career, without experiencing adverse health effects. These publications included asbestos as a potential toxic dust.

24.

By no later than the 1940s and early 1950s, the dangers of high exposures to asbestos, even in short duration, were well-documented and well-accepted. By 1952, the Louisiana Legislature had added asbestosis to the list of compensable occupational diseases under the Louisiana Worker's Compensation Act, codified in Louisiana Revised Statutes 23:1031.1(A) (1952).

25.

The causal connection between asbestos and lung cancer was well-documented by the 1950s at the very latest. In 1955, Richard Doll, M.D., published a landmark study in the British Journal of Industrial Medicine that established a causal link between asbestos exposure and lung

8

cancer to the satisfaction of even skeptical medical scientists and further noted the long latency period of the asbestos-related disease. *His* studies laid the foundation for further studies that explored the connection between asbestos exposure and lung cancer, including the monumental studies by the American medical researcher Irving J. Selikoff, M.D., published in 1964 and 1965.

26.

The causal connection between asbestos and mesothelioma was well-documented by the 1960s at the very latest. Between 1959 and 1962, J. C. Wagner, M.D., presented findings and authored publications that linked asbestos exposure to mesothelioma in South Africa. By 1964 and 1965, articles in prominent American and British medical journals resulted in the general medical recognition that mesothelioma was an asbestos-related disease. Finally, Dr. Selikoff's publication entitled "Biological Effects of Asbestos" in the Annals of the New York Academy of Sciences in 1965 provided perhaps the most compelling and irrefutable evidence at that time of the dangers of asbestos exposure.

27.

As a proximate result of the defendants' acts and omissions, Dolores Punch was caused to have mesothelioma, a deadly cancer. She was caused to suffer physical pain and mental anguish. She was caused to seek medical treatment and prevented from going about her normal activities. She was caused to incur medical and hospital expenses to treat her injuries.

28.

**Contra Non Valentum**

a.

The prescriptive period does not start until the plaintiff knew or should have known that Dolores Punch's mesothelioma was caused by asbestos. Here, the results of Dolores Punch's exposure to asbestos was inherently undiscoverable. The cancer took years to develop.

Dolores Punch was diagnosed with adenocarcinoma on May 25, 2010 and again on June 30, 2011. She was diagnosed with mesothelioma on July 15, 2011 and died on August 15, 2011. Judith Punch did not learn of a possible causal connection between the asbestos and mesothelioma until May 17, 2017. The limitation period didn't start until after May 17, 2017, when the plaintiff learned about the cause of her mother's death. The defendants concealed and

misrepresented the health hazards of asbestos from the plaintiff which led her to a course of inaction in the enforcement of her rights by reason of some concealment or fraudulent conduct on the part of the defendants or because of the failure to perform some legal duty whereby plaintiff has been kept in ignorance of her rights.

Plaintiff was never informed that Dolores Punch was diagnosed with mesothelioma and did not know what asbestos was, or that asbestos caused mesothelioma prior to May 17, 2017. On or about May 17, 2017, Plaintiff saw an advertisement for mesothelioma caused by asbestos. Prior to May 17, 2017 Plaintiff had never seen an advertisement for mesothelioma. Plaintiff did not know that her father's work exposed him and her mother to asbestos. Plaintiff could not know Dolores Punch was exposed to asbestos prior to May 17, 2017.

### b.

Because of the latency period of the above injuries and other injuries caused by asbestos and asbestos-containing products the Plaintiff has only recently discovered that Dolores Punch's injuries were causally related to exposure to asbestos which occurred between 1948 through 1967 while her husband, Richard Punch Sr., worked at Avondale and Kaiser Aluminum.

### Damages

### 29.

As a proximate result of the defendants' acts and omissions, Judith Rivera was caused to lose the love and affection of her mother, Dolores Punch. She further suffered loss of companionship and moral support, loss of her mother's decreased ability to perform household services, loss of aid and assistance in the family unit, and a loss of happiness and contentment in their relationship. She also endured substantial anguish and grief in watching her mother suffer from an excruciatingly painful and disabling disease, and death, and she is entitled to damages for this mental pain and suffering.

### 30.

The plaintiff is entitled to damages, for Dolores Punch, in excess of $50,000, for the following:

a. Past physical and mental pain and suffering, and emotional distress for Dolores Punch's mesothelioma;

b. Fear of dying, which she has endured since the time of her diagnosis until death;

c.    Loss of enjoyment of life;

d.    Past medical expenses, convalescence, therapy, and all other health care expenses;

e.    Other miscellaneous expenses incurred as a result of her mesothelioma;

f.    Disfigurement and embarrassment;

g.    Physical and mental impairment and disability;

h.    Loss of society, consortium, companionship. services, nurturing, and love and affection;

i.    Any other damages to which the plaintiff is entitled, plus interest and costs.

### 31.

As a proximate result of the defendants' acts and omissions that caused the wrongful death of Dolores Punch, Judith Rivera was caused the lose of her beloved mother.  She was caused tremendous grief, anguish, and emotional distress.  She was caused to lose the support provided by Dolores Punch and her services, advice, and training.  She was caused to incur burial and funeral expenses.  She was caused to lose the value of Dolores Punch's monetary contributions to the family.  She will continue to suffer these damages in the future.

### 32.

Judith Rivera is entitled to damages in excess of $50,000 for the following:

a.    Past, present, and future emotional distress, including love, affection, companionship, society, solace, and moral support;

b.    Past, present, and future grief and anguish;

c.    Past, present, and future loss of support;

d.    Funeral and burial expenses;

e.    Past, present, and future loss of monetary contributions from Dolores Punch;

f.    Past, present, and future loss of value of Dolores Punch's personal service, advice, and training; and

g.    Any other damages to which they are entitled under the law, plus costs and interest.

### 33.

WHEREFORE, the plaintiff Judith Rivera prays that the defendants named herein,

HUNTINGTON INGALLS INC. F/K/A Northrop Grumman Ship Systems, Inc. F/K/A

Avondale Industries, Inc.; EAGLE INC.; THE MCCARTY CORP.; CROWN, CORK & SEAL USA, INC.; AMEC FOSTER WHEELER CONSTRUCTORS, INC. F/K/A Foster Wheeler Inc. F/K/A Foster Wheeler Corp.; ARROWOOD INDEMNITY COMPANY; REILLY-BENTON COMPANY, INC.; and OWENS-ILLINOIS INC., be duly cited to appear and answer this petition and that after due proceedings are had there be judgment rendered herein in their favor and against the defendants, jointly, severally, and in solido, for an amount reasonable under the premises, for *all* costs of the proceedings, for a trial by jury on all issues so triable, and for all general and equitable relief to which they are entitled.

Respectfully Submitted:

L. Eric Williams (#26773)
Alexis C. Normand (#37247)
WILLIAMS LAW OFFICE LLC
433 Metairie Road, Suite 401
Metairie, Louisiana 70005
Telephone (504) 832-9898
Facsimile (504) 832-9811
Email: eric@amlbenzene.net
Email: alexis@amlbenzene.net

And

John J. Finckbeiner, Jr. (#18211)
THE LAW OFFICES OF JOHN
J.FINCKBEINER, JR.
2203 Pakenham Drive
Chalmette, Louisiana 70043
Telephone: 504- 279-5177
Facsimile: 504-279-5375
Email: john@jfjustice.com
**Attorneys for the Plaintiff**

PLEASE SERVE:

HUNTINGTON INGALLS INC.
Through its agent for service of process
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, Louisiana 70816

EAGLE INC.
Through its agent for service of process
Susan B. Kohn

12

1100 Poydras St., 30th Floor
New Orleans, Louisiana 70163

**THE MCCARTY CORP.**
Through its agent for service of process
Paul H. Spaht
4232 Bluebonnet Blvd.
Baton Rouge, Louisiana 70809

**CROWN, CORK & SEAL USA, INC.**                    LONG ARM SERVICE
Through its agent for service of process
The Corporation Trust Company, Corporation Trust Center
1209 Orange St.
Wilmington, Delaware, 19801

**AMEC FOSTER WHEELER CONSTRUCTORS, INC.**
Through its agent for service of process
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, Louisiana 70816

**ARROWOOD INDEMNITY COMPANY**
Through its agent for service of process
Louisiana Secretary of State
8585 Archives Ave.
Baton Rouge, Louisiana 70809

**REILLY-BENTON COMPANY, INC.**
Through its agent for service of process
Thomas L. Cougill C/O Willingham Fultz & Cougill, LLP
8550 United Plaza Blvd., Ste. 702
Baton Rouge, Louisiana 70809

**OWENS-ILLINOIS, INC.,**                    LONG ARM SERVICE
Through its agent for service of process
Owens-Illinois, Inc.
One Michael Owens Way
Perrysburg, Ohio, 43551

A TRUE COPY
Randy S. Nunez
CLERK OF COURT
PARISH OF ST. BERNARD
STATE OF LOUISIANA

DEPUTY CLERK

/s/ Hailey Hiers