UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JUDITH PUNCH RIVERA** | **CIVIL ACTION** |
| **VERSUS** | **NO: 18-6795** |
| **HUNTINGTON INGALLS, INC. ET AL.** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Plaintiff's Motion to Remand (Doc. 9). For the following reasons, the Motion is **DENIED**.

## BACKGROUND

This asbestos litigation stems from a wrongful death and survival suit filed in state court by Plaintiff Judith Punch Rivera on behalf of her deceased mother, Dolores Punch.[1] Plaintiff filed her original petition in Louisiana's 34th Judicial District Court in St. Bernard Parish on June 8, 2017, claiming Punch died on August 15, 2011, from mesothelioma she contracted as a result of

---

[1] Doc. 1-1 at 3.

1

washing her husband's asbestos-ridden clothing for years.[2] The suit names numerous defendants, including Kaiser Aluminum and Huntington Ingalls, Inc. ("Avondale").[3] Avondale is the current owner of the company the decedent's husband worked for when he handled asbestos-containing material as a pipefitter and welder at the Avondale shipyard in New Orleans from 1948 to 1960.[4] The decedent's husband, Richard Punch Sr., also worked from 1961 to 1967 at Kaiser Aluminum in Chalmette, Louisiana, in the same type of jobs handling the same kinds of asbestos-containing materials.[5]

On August 18, 2017, this suit was transferred to the Civil District Court in Orleans Parish.[6] There, on July 6, 2018, Plaintiff filed a first supplemental and amended petition.[7] In it, Plaintiff alleged it was not just the asbestos-covered clothes of decedent's husband, but also those of decedent's son, that caused decedent's mesothelioma.[8] Decedent's son, Richard Punch Jr., worked as a helper and pipefitter at Avondale from 1976 to 1979.[9] Plaintiff alleged state law strict liability and negligent failure to warn, supervise, and train claims against Avondale and other defendants as part of her wrongful death and survival suit.[10]

On July 18, 2018, Defendant Avondale removed Plaintiffs' suit to this Court under the Federal Officer Removal Statute.[11] In essence, Defendant

---

[2] Doc. 1-1 at 3.
[3] This Court refers to Defendant Huntington Ingalls, Inc., as "Avondale" because that is how it is commonly known and that is how the parties refer to it. Huntington Ingalls, Inc., was formerly known as Avondale Industries, Inc., and Avondale Shipyards, Inc. Doc. 1-1 at 1.
[4] Doc. 1-1 at 3.
[5] Doc. 1-1 at 3.
[6] Doc. 1-2 at 3.
[7] Doc. 1-7.
[8] Doc. 1-7 at 1–2.
[9] Doc. 1-7 at 1–2.
[10] *See* Doc. 1-1, 1-7.
[11] Doc. 1 at 10. *See* 28 U.S.C. § 1442(2)(a)(1).

Avondale argues it is entitled to removal because it only engaged in the conduct underlying Plaintiffs' claims—the use of asbestos-containing products in Avondale's shipbuilding business—because Avondale's contracts with the federal government required it to do so.[12]

Plaintiff filed a Motion to Remand this case to state court on July 25, 2018, arguing that Defendant Avondale failed to meet the necessary requirements of the Federal Officer Removal Statute.[13] Defendant Avondale opposes.[14] The Court heard Oral Argument in this matter on September 12, 2018.

## **LEGAL STANDARD**

Generally, a defendant may remove a civil state court action to federal court if the federal court has original jurisdiction over the action.[15] The burden is on the removing party to show "that federal jurisdiction exists and that removal was proper."[16] When determining whether federal jurisdiction exists, courts consider "the claims in the state court petition as they existed at the time of removal."[17]

## **LAW AND ANALYSIS**

Defendant argues this Court has jurisdiction under 28 U.S.C. § 1442(a)(1) ("Federal Officer Removal Statute"). Under the statute, an action commenced in state court "that is against or directed to . . . The United States

---

[12] Doc. 1 at 4–5.
[13] *See* Doc. 9.
[14] *See* Doc. 14.
[15] 28 U.S.C. § 1441.
[16] Barker v. Hercules Offshore, Inc., 713 F.3d 208, 212 (5th Cir. 2013) (quoting Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 722 (5th Cir. 2002)).
[17] *Manguno*, 276 F.3d at 723.

or any agency thereof or any officer (*or any person acting under that officer*)" may be removed.[18] Because Avondale is not an agency of the United States, "[t]o remove, [it] must show: '(1) that it is a person within the meaning of the statute, (2) that it has 'a colorable federal defense,' (3) that it 'acted pursuant to a federal officer's directions,' and (4) 'that a causal nexus exists between [its] actions under color of federal office and the plaintiff's claims.'"[19] Although remand to state court is generally preferred when removal jurisdiction is questionable, courts must broadly construe the Federal Officer Removal Statute, interpreting it liberally to support federal jurisdiction when appropriate.[20] Nevertheless, the statute's scope is "not limitless."[21]

## I. Avondale Is a "Person" Under the Statute

Plaintiff does not dispute that Defendant Avondale is a "person" within the meaning of the Federal Officer Removal Statute.[22] As Defendant points out in its Memorandum opposing Plaintiff's Motion, both the Supreme Court and the Fifth Circuit have "long recognized" that the Federal Officer Removal Statute applies both to private persons and corporate entities that assist a federal agency in its official duties.[23] Because Defendant Avondale was a corporate entity lawfully assisting the federal government with building naval ships at the time the key conduct in this suit transpired,[24] the element is satisfied.

## II. Avondale Has a "Colorable Federal Defense"

---

[18] 28 U.S.C. § 1442(a)(1) (emphasis added).
[19] Legendre v. Huntington Ingalls, Inc., 885 F.3d 398, 400 (5th Cir. 2018) (quoting Zeringue v. Crane Co., 846 F.3d 785, 789 (5th Cir. 2017)).
[20] *See* Savoie v. Huntington Ingalls, Inc., 817 F.3d 457, 460–61 (5th Cir. 2016) (citing Watson v. Philip Morris Cos., 551 U.S. 142, 147 (2007)).
[21] *Watson*, 551 U.S. at 147.
[22] Doc. 9-1 at 10–11.
[23] *See Savoie*, 817 F.3d at 461 (citing *Watson*, 551 U.S. at 151).
[24] *See* Doc. 1.

4

The Federal Officer Removal Statute effectively allows defendants to overcome the limits of the well-pleaded complaint rule and establish federal jurisdiction merely by raising a federal *defense* to state law claims by a plaintiff.[25] To succeed at the removal stage, a defendant need not show a "clearly sustainable" defense.[26] Instead, the defense need only be "colorable."[27] When interpreting the meaning of "colorable" as used within the Federal Officer Removal Statute, the Fifth Circuit has taken the inverse approach of defining a "non-colorable claim" to shed light on the meaning of a "colorable" one.[28] "[A] non-colorable federal defense is a defense that is immaterial and made solely for the purpose of obtaining jurisdiction or that is wholly insubstantial and frivolous."[29] Avondale raises as its colorable federal defense the jurisprudential doctrine of government contractor immunity, commonly known as the "contractor defense," as established by the Supreme Court in *Boyle v. United Techs. Corp.*[30] Thus, unless Avondale's contractor defense is wholly insubstantial and frivolous, it will satisfy this element.

### a. The Government Contractor Defense Applies to Plaintiff's Claims

In general, the government contractor defense as explained in *Boyle* "provides immunity to contractors for conduct that complies with the specifications of a federal contract."[31] In *Boyle*, the Court set forth three elements a defendant must meet to establish the "colorable federal defense"

---

[25] *Zeringue*, 846 F.3d at 789.
[26] *Id.* at 789–90 (quoting Jefferson Cty. V. Acker, 527 U.S. 423, 431 (1999)).
[27] *Zeringue*, 846 F. 3d at 790.
[28] *Id.*
[29] *Id.*
[30] Doc. 1 at 8. *See* Boyle v. United Techs. Corp., 487 U.S. 500 (1988) (establishing and outlining modern "contractor defense" theory elements).
[31] Crutchfield v. Sewerage & Water Bd. of New Orleans, 829 F.3d 370, 375 (5th Cir. 2016) (citing *Boyle*, 487 U.S. at 500).

requirement using the government contractor defense.[32] Plaintiff, however, does not address whether Defendant Avondale satisfied the merits of each condition necessary for the defense. Instead, Plaintiff makes general arguments about why the government contractor defense should not apply to her claims.

First, Plaintiff argues the government contractor defense is applicable only in design or manufacturing defect cases, not failure to warn cases.[33] In support, Plaintiff cites to two cases from the Northern District of California.[34] In relying on these cases, Plaintiff ignores Fifth Circuit law directly on point. In the Fifth Circuit, the government contractor defense applies both to design defect cases and failure to warn cases.[35] Thus, the defense applies to the claims made by Plaintiff in this case.

Second, Plaintiff argues that the defense does not apply because Plaintiff made her failure to warn claims against only manufacturers and suppliers of asbestos-containing materials, not Avondale, a shipbuilder. Third, Plaintiff argues that the contractor defense only applies when the asbestos-containing materials are military equipment.[36] Plaintiff cites to no cases to support these arguments. For starters, Plaintiff ignores her own petition, which clearly makes negligence and failure to warn claims against "the defendants," a term

---

[32] See Defendant's Memorandum in Opposition to Plaintiff's Motion to Remand, Doc. 14 at 19, for a list of the factors followed by an analysis of each.
[33] Doc. 9-1 at 10–11.
[34] *See* Westbrook v. Asbestos Defendants (BHC), No. C-01-1661 VRW, 2001 WL 902642, at *1 (N.D. Cal. July 31, 2001); Overly v. Raybestos-Manhattan, No. C-96-2853 SI, 1996 WL 532150, at *1 (N.D. Cal. Sept. 9, 1996).
[35] Jowers v. Lincoln Elec. Co., 617 F.3d 346, 353 (5th Cir. 2010) (rejecting argument that government contractor defense does not apply in failure to warn cases). *See also* Kerstetter v. Pac. Sci. Co., 210 F.3d 431, 438 (5th Cir. 2000) (applying government contractor defense as explained in *Boyle* to failure to warn claims).
[36] *See* Doc. 9-1 at 10–11.

that includes Avondale within its meaning.[37] Beyond that, because Plaintiff provides no support for its contention that the government contract defense only applies when the asbestos-containing materials are military equipment, the Court declines to entertain the argument.

### b. Analyzing the *Boyle* Conditions

Although Plaintiff failed to challenge Defendant Avondale's arguments regarding each factor of the *Boyle* test, this Court must analyze the issue because federal courts cannot create subject-matter jurisdiction where it does not exist. To succeed on the merits of the defense, Avondale must show: (1) the United States approved "reasonably precise specifications" to use asbestos-containing products when building ships for the government; (2) Avondale's ships "conformed" to those specifications; and (3) if Avondale knew about dangers associated with asbestos that the government did not know, Avondale warned the government accordingly.[38] Here, at the removal stage, Avondale need only show the defense is "colorable."[39] The Court will analyze each *Boyle* condition separately.

### i. The Government Approved Reasonably Precise Specifications for the Ships' Construction

To prevail under the government contractor defense, a shipbuilding contractor defendant, like Avondale, must first show that the federal government approved "reasonably precise specifications" for construction of the ships.[40] In other cases like this one, the Fifth Circuit has held that Avondale satisfied this factor because the government's mandatory contract terms required Avondale to build ships with specific asbestos-containing

---

[37] Doc. 9-2 at 6.
[38] *Zeringue*, 846 F. 3d at 790 (quoting *Boyle*, 487 U.S. at 512).
[39] *See Zeringue*, 846 F.3d at 789–90.
[40] *Boyle*, 487 U.S. at 512.

material.⁴¹ Defendant submitted evidence to support the fact that it built ships with asbestos-containing material pursuant to the terms of its contracts with the federal government.⁴² Accordingly, Defendants meets this condition.

### ii. The Ships Conformed to the Specifications

To meet the second condition, Defendant Avondale must show the ships it built conformed to the government's contract specifications requiring the use of asbestos-containing material.⁴³ There is ample support that Avondale complied with the government's contract specifications.⁴⁴ Similar evidence was sufficient to satisfy this condition before the Fifth Circuit.⁴⁵ Defendant Avondale meets this condition.

### iii. Avondale Warned the Government of Hazards Presented by the Required Asbestos-Containing Components That Were Known to It but Not the Government

The third condition requires Defendant Avondale to show it warned the government of any dangers regarding asbestos that it knew of if the government did not also know of those dangers.⁴⁶ Defendant submitted affidavit and deposition testimony of a maritime historian, an industrial hygienist, and a retired Assistant Surgeon General of the United States to show Avondale knew no more than the government did about the dangers of asbestos at the time Avondale used asbestos-containing materials in its

---

⁴¹ *See Zeringue*, 846 F.3d at 791–92; Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 400–01 (5th Cir. 1998).
⁴² *See* Doc. 14-1 at 8–9.
⁴³ *See Boyle*, 487 U.S. at 512; *Zeringue*, 846 F.3d at 790.
⁴⁴ *See, e.g.*, Doc. 14-6 at 24, 28, 30; Doc. 14-3 at 16–17.
⁴⁵ *See Zeringue*, 846 F.3d at 792.
⁴⁶ *See Boyle*, 487 U.S. at 512.

8

shipbuilding work.[47] Other sections of this Court have relied on the exact same evidence in finding that Avondale satisfied this third condition of *Boyce*.[48] Because Avondale need only assert a "colorable" defense, and because Plaintiff does not dispute the merits of Avondale's government contractor defense, this Court finds Avondale has presented sufficient evidence to meet the third *Boyle* condition. Having satisfied all three *Boyle* conditions, Avondale successfully asserted the government contractor immunity defense as a "colorable" federal defense to support removal under the Federal Officer Removal Statute.

### III. Avondale "Acted Pursuant to Federal Officers' Directions"

Plaintiff cites to deposition testimony to support her argument that Defendant Avondale was not acting pursuant to federal direction at the time decedent was exposed to asbestos-containing material.[49] Except for this testimony, Plaintiff offers little beyond repeated conclusory assertions throughout her memoranda to support her argument. Despite these assertions, it is clear that in the Fifth Circuit Defendant Avondale "acted under" federal direction when the relevant asbestos exposure occurred during Avondale's building of ships for the federal government.[50] This element is satisfied.

### IV. A "Causal Nexus" Exists

The heart of the dispute in this case resides within the "causal nexus" inquiry. To reiterate, to successfully remove under the Federal Officer Removal Statute, a defendant must show that the conduct underlying a plaintiff's claims

---

[47] *See* Doc. 14-1 at 10–11 (affidavit of Christopher Herfel, maritime historian); Doc. 14-5 at 2 (affidavit of Danny Joyce, industrial hygienist); Doc. 14-8 at 18–22 (deposition of Dr. Richard Lemen, retired Assistant Surgeon General of the United States).
[48] *See* Pitre v. Huntington Ingalls, Inc., No. 17-7029, 2017 WL 6033032, at *6 (E.D. La. Dec. 6, 2017); Savoie v. Pennsylvania Gen. Ins. Co., No. 15-1220, 2017 WL 2391264, at *7 (E.D. La. June 2, 2017).
[49] Doc. 9-1 at 8–10.
[50] Wilde v. Huntington Ingalls, Inc., 616 F. App'x 710, 713 (5th Cir. 2015).

was caused by the defendant's obedience of orders by the federal government.[51] This is the so-called "causal nexus" requirement. Although the scope of the meaning of "causal nexus" has been subject to much litigation in the Fifth Circuit,[52] the element's meaning as it relates to this case is clear. As a result, the outcome-determinative question before this Court is whether the Court should consider Plaintiff's request to amend her strict liability claims against Avondale—a request not made until *after* Avondale removed the suit—as part of its analysis of Plaintiff's Motion to Remand.

### a. Strict Liability Claims Satisfy the Causal Nexus Element

When a plaintiff makes a strict liability claim against Avondale based on Avondale's use of asbestos-containing material pursuant to its obligations under shipbuilding contracts it had with the federal government, the causal nexus element is satisfied.[53] But when the claim is for negligent failure to warn, train, and adopt safety procedures regarding asbestos, "removal . . . [is] inappropriate because the nexus requirement is not met."[54] The theory underlying the distinction is that just because the government required Avondale to use asbestos-containing material does not mean Avondale was not free to adopt safety measures to protect its employees from handling the dangerous materials. Put succinctly, the government's mandate that Avondale use asbestos did not cause Avondale to fail to warn its employees about the

---

[51] *See Legendre*, 885 F.3d at 400 (quoting *Zeringue*, 846 F.3d at 789).

[52] *See, e.g.*, *Legendre*, 885 F.3d at 400; Melancon v. Lamorak Ins. Co., No. 18-30113, 2018 WL 3612543, at *1 (5th Cir. July 26, 2018) ("This case is the latest in an ever-increasing line of cases brought by former Huntington Ingalls employees or their family members in state court alleging asbestos exposure."); Savoie v. Huntington Ingalls, Inc., 817 F.3d 457, 459 (5th Cir.), *cert. denied*, 137 S. Ct. 339 (2016).

[53] *See Melancon*, 2018 WL 3612543, at *2 ("For strict liability claims that 'rest on the mere use of asbestos,' a causal nexus is established because 'the government obligates the defendant to use the allegedly defective product that causes the plaintiff's harm.'") (quoting *Savoie*, 817 F.3d at 465–66).

[54] *Melancon*, 2018 WL 3612543, at *2 (citing *Legendre*, 885 F.3d at 402).

dangers of asbestos. On the contrary, when a plaintiff alleges Avondale is strictly liable for the mere use of asbestos-containing products, it makes more sense to find as a matter of law that the government's mandate to use asbestos caused Avondale's allegedly unlawful behavior.

### b. Plaintiff Makes Strict Liability Claims Against Avondale

Plaintiff argues that she "did not file claims of strict liability against Avondale and will file a motion to amend her complaint for clarity . . ."[55] But Plaintiff misstates the allegations of her suit. Even in her *amended* state court petition, Plaintiff alleged the following: "*The defendants* are obligated in solido, jointly and severally, to the plaintiff, *under strict liability* and negligence, for their acts and omissions that caused Dolores Punch's malignant mesothelioma."[56] Avondale is among "the defendants" named in the amended petition.[57] Although Plaintiff now declares simultaneously that she "did not file claims of strict liability against Avondale"[58] and that she "inadvertently stated 'strict liability' in name only,"[59] this Court cannot ignore the amended petition's plain language.

### c. Considering Plaintiff's Strict Liability Claims Existing at the Time of Removal, Avondale Satisfied the Causal Nexus Element

Recognizing the fatal effect of the strict liability claims on her Motion to Remand, Plaintiff argues that this Court should allow her to undo those claims, apply the change retroactively, and grant her Motion.[60] In support, Plaintiff

---

[55] Doc. 9 at 2.
[56] Doc. 9-3 at 5 (emphasis added).
[57] Doc. 9-3 at 8. Plaintiff alleged strict liability claims against Avondale in the original petition too. Doc. 1-1 at 5.
[58] Doc. 9 at 2.
[59] Doc. 9-1 at 2.
[60] *See* Doc. 9-1 at 2–4.

11

cites to a pair of cases from the Northern District of California for the proposition that "a disclaimer in an amended petition or amended complaint is adequate and justifies remand."[61] Plaintiff also cites to two cases from other sections of this Court for the same principle.[62] But in both of the cases from other sections of this Court and at least one of the cases out of California, the plaintiffs all sought to disclaim key allegations *before* removal happened.[63] In the other case from California, it is unclear from the opinion when the plaintiff sought to disclaim the key allegations—pre-removal or post-removal—meaning this Court cannot make any inference regarding its persuasiveness.[64]

Plaintiff also cites to a Supreme Court case, *Carnegie-Mellon Univ. v. Cohill*,[65] for the proposition that a district court has discretion to remand a case to state court if a federal claim forming the basis of the federal question jurisdiction is dismissed.[66] But that case is not directly on point. The direct issue was not whether it was appropriate for a district court to base its decision on a Motion to Remand on a post-removal request to delete federal question claims, but instead, on a broader level, whether a district court has the power to remand a removed case involving supplemental state law claims when the district court thought doing so would be appropriate.[67] In fact, in *Cohill*, the Court cautioned district courts to be weary of plaintiffs who relied on

---

[61] Doc. 9-1 at 3. *See also Westbrook*, 2001 WL 902642, at *2; *Overly*, 1996 WL 532150, at *1.
[62] *See* Sheppard v. Northrop Grumman Sys. Corp., No. 07-2208, 2007 WL 1550992, at *1 (E.D. La. May 24, 2007); Meyers v. Chesterson, No. 15-292, 2015 WL 3797139, at *1 (E.D. La. June 18, 2015).
[63] *See Sheppard*, 2007 WL 1550992, at *1; *Meyers*, 2015 WL 3797139, at *1; *Westbrook*, 2001 WL 902642, at *2 (noting that the plaintiff's disclaimer occurred pre-removal in writing to state court).
[64] *See Overly*, 1996 WL 532150 (failing to clarify exactly when the plaintiff disclaimed any design defect claims against Avondale).
[65] 484 U.S. 343 (1988).
[66] Doc. 9-1 at 3.
[67] Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988).

"manipulative tactics" to obtain their desired forum.[68] Attempting to delete claims sufficient to justify removal only *after* a defendant cites such claims in its Notice of Removal seems exactly like the type of "manipulative" behavior the Supreme Court warned district courts about in *Cohill*.

In *Pullman Co. v. Jenkins*,[69] the Supreme Court held that district courts should make removal decisions based upon the allegations asserted by a plaintiff at the time removal occurred.[70] As recently as 2016, the Fifth Circuit cited *Pullman* approvingly for the same proposition.[71] The Fifth Circuit has stated the reasoning behind the rule—at least in the context of diversity cases—as follows:

> The rationale for determining removal jurisdiction on the basis of claims in the state court complaint as it exists at the time of removal is obvious. Without such a rule, disposition of the issue would never be final, but would instead have to be revisited every time the plaintiff sought to amend the complaint to assert a new cause of action against the nondiverse defendant, all at considerable expense and delay to the parties and the state and federal courts involved. Limiting the removal jurisdiction question to the claims in the state court complaint avoids that unacceptable result, and permits early resolution of which court has jurisdiction, so that the parties and the court can proceed with, and expeditiously conclude, the litigation.[72]

The same reasoning, albeit with less force, applies in federal question cases. If the Court allowed plaintiffs to strategically delete specific claims to defeat removal and then remanded the case, defendants might just ground their removal on different claims in the state petition. Worse, plaintiffs might simply attempt to further amend their claims once back in state court to add

---

[68] *Id.*
[69] 305 U.S. 534 (1939).
[70] *Pullman*, 305 U.S. at 537.
[71] Spear Mktg., Inc. v. BancorpSouth Bank, 844 F.3d 464, 469 (5th Cir. 2016).
[72] Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 264 (5th Cir. 1995).

removable claims. As explained in *Cavalli v. State Farm*, determining removability based on the claims presented at the time of removal promotes early resolution during litigation.[73]

Defendant, to further support its argument that this Court should decide removability based on the claims Plaintiff made in her amended state court petition, cites to several cases from district courts in Louisiana holding that removal should be decided on claims presented at time of removal.[74] Notably, in a decision from a different section of this Court on this exact issue less than a year ago, the court ruled that a post-removal amendment deleting claims justifying removal does not mandate remand.[75] Plaintiff responds by citing to *Cohill* for the proposition that remand is "preferable" if a federal question is eliminated relatively soon after removal.[76] But *Cohill* simply does not stand for that proposition. On the whole, it is clear that a district court should decide the issues in a Motion to Remand based on the claims pending at the time the defendant removed the case.[77] Because this Court treats Plaintiff's amended state court petition as having stated a strict liability claim against Avondale at the time removal occurred, Defendant Avondale satisfied the causal nexus

---

[73] *Id.*
[74] *See* Doc.14 at 15–16.
[75] *Pitre*, 2017 WL 6033032, at *4 ("Although an amended complaint deleting federal claims may permit a discretionary remand, it does not destroy federal jurisdiction over a validly removed case. Here, the Court finds that remand is not justified. Avondale's notice of removal is valid, and the Court properly acquired jurisdiction over this matter.")
[76] Doc. 17 at 2.
[77] *See, e.g.*, Rockwell Int'l Corp. v. United States, 549 U.S. 457, 474 n.6 (2007) (noting manipulation concerns as reason for general rule) ("It is true that, when a defendant removes a case to federal court based on the presence of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction."); Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C., 768 F.3d 425, 426 (5th Cir. 2014) (holding that removal jurisdiction should be decided "on the pleadings at the time the class action is removed, not on an amended complaint filed after removal"); Fradella v. Coca-Cola Co., No. 17-9622, 2018 WL 1150899, at *5 (E.D. La. Mar. 5, 2018) (denying Plaintiff's motion to remand when plaintiff sought leave post-removal to amend complaint to add non-diverse defendant that would have required remand).

requirement of the Federal Officer Removal Statute. As such, Defendant satisfied all four elements necessary for removal under the Federal Officer Removal Statute.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Remand (Doc. 9) is **DENIED**.

New Orleans, Louisiana this 25th day of September, 2018.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**