UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JUDITH PUNCH RIVERA | CIVIL ACTION |
| VERSUS | NO: 18-6795 |
| HUNTINGTON INGALLS, INC. ET AL. | SECTION: "H" |

## ORDER AND REASONS

Before the Court is Defendant Huntington Ingalls, Inc.'s Motion for Summary Judgment (Doc. 24). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

This asbestos litigation stems from a wrongful death and survival suit filed in state court by Plaintiff Judith Punch Rivera on behalf of her deceased mother, Dolores Punch.[1] Plaintiff filed her original petition in Louisiana's 34th Judicial District Court in St. Bernard Parish on June 8, 2017, nearly six years after Punch's death on August 15, 2011.[2] In the petition, Plaintiff alleges that

---

[1] Doc. 1-1 at 3.
[2] *See* Doc. 1-1.

her mother contracted mesothelioma as a result of washing her husband's asbestos-ridden clothing for many years before her death.[3] The suit names numerous defendants, including Kaiser Aluminum and Huntington Ingalls, Inc. ("Avondale").[4] Avondale is the current owner of the company that the decedent's husband worked for when he handled asbestos-containing material as a pipefitter and welder at the Avondale shipyard in New Orleans from 1948 to 1960.[5] The decedent's husband, Richard Punch Sr., also worked from 1961 to 1967 at Kaiser Aluminum in Chalmette, Louisiana, in similar jobs handling the same kinds of asbestos-containing materials.[6]

On August 18, 2017, this suit was transferred from St. Bernard Parish to the Civil District Court in Orleans Parish.[7] There, on July 6, 2018, Plaintiff filed a first supplemental and amended petition.[8] In it, Plaintiff alleged it was not just the asbestos-covered clothes of decedent's husband, but also those of decedent's son, that caused decedent's mesothelioma.[9] Decedent's son, Richard Punch Jr., worked as a helper and pipefitter at Avondale from 1976 to 1979.[10] Plaintiff alleged state law strict liability and negligent failure to warn, supervise, and train claims against Avondale and other defendants as part of her wrongful death and survival suit.[11]

---

[3] *Id.* at 3.
[4] This Court refers to Defendant Huntington Ingalls, Inc., as "Avondale" because that is how it is commonly known and that is how the parties refer to it. Huntington Ingalls, Inc., was formerly known as Avondale Industries, Inc., and Avondale Shipyards, Inc. *Id.* at 1.
[5] *Id.* at 3.
[6] *Id.*
[7] Doc. 1-2 at 3.
[8] Doc. 1-7.
[9] *Id.* at 1–2.
[10] *Id.*
[11] *See* Docs. 1-1, 1-7.

2

On July 18, 2018, Defendant Avondale removed Plaintiffs' suit to this Court.[12] In response, Plaintiff filed a Motion to Remand,[13] which this Court denied in its September 25, 2018 Order and Reasons.[14] Defendant Avondale subsequently filed the instant Motion for Summary Judgment on October 2, 2018.[15] Defendants Arrowood Indemnity Company, McCarty Corporation, Eagle, Inc., Owens-Illinois, Inc., and Foster Wheeler, LLC, subsequently requested and received leave from this Court to adopt and join Avondale's Motion.[16] The Court heard Oral Argument in this matter on November 1, 2018.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[17] "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[18] Nevertheless, a dispute about a material fact is "genuine" such that summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[19]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[20] "If the moving party meets the initial

---

[12] Doc. 1.
[13] *See* Doc. 9.
[14] Doc. 23.
[15] Doc. 24.
[16] *See* Docs. 30, 34, 38, 41.
[17] Fed. R. Civ. P. 56.
[18] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[19] *Id.* at 248.
[20] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).

3

burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[21] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[22] "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[23] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[24] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[25]

## LAW AND ANALYSIS

Defendant Avondale argues that it is entitled to summary judgment because Plaintiff's claims are prescribed.[26] Plaintiff responds that her claims are not prescribed under Louisiana's doctrine of *contra non valentem*, which provides that "prescription does not run against a person who could not bring his suit."[27] Although Louisiana jurisprudence recognizes four situations in

---

[21] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[22] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[23] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[24] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[25] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[26] *See* Doc. 24.
[27] *See* Docs. 1-1 at 9–10, 33. *See also* Carter v. Haygood, 892 So. 2d 1261, 1268 (La. 2005).

4

which *contra non valentem* may apply,[28] Plaintiff argues that only two apply in this case: the discovery rule and the concealment rule.[29]

## I. Plaintiff's Claims Are Facially Prescribed

In her petition, Plaintiff makes Louisiana wrongful death and survival claims against Defendant Avondale based on allegations that it negligently failed to warn Plaintiff's mother about the health risks associated with the asbestos that her son and husband brought home from work on their clothes for years.[30] Under Louisiana law, the prescriptive period for wrongful death and survival claims is one year from the death of the deceased.[31] Dolores Punch died on August 15, 2011.[32] Plaintiff did not file suit until June 8, 2017.[33] Plaintiff's claims, therefore, are facially prescribed, and Plaintiff bears the burden of showing why the claims have not prescribed.[34]

## II. Plaintiff's Claims Prescribed Under the Discovery Rule

The discovery rule provides that "prescription commences on the date the injured party discovers or should have discovered the facts upon which his cause of action is based."[35] It applies "where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant."[36] To determine whether a cause of action is

---

[28] *See Carter*, 892 So. at 1268.
[29] *See* Doc. 33.
[30] *See* Doc. 1-1.
[31] LA. CIV. CODE art. 2315.1 (providing that survival claims prescribe "one year from the death of the deceased"); LA. CIV. CODE art. 2315.2 (providing that wrongful death claims prescribe "one year from the death of the deceased").
[32] *See* Doc. 1-1 at 3.
[33] *See* Doc. 1-1.
[34] Bouterie v. Crane, 616 So. 2d 657, 660 (La. 1993) ("When a petition reveals on its face that prescription has run, the plaintiff has the burden of showing why the claim has not prescribed.").
[35] Specialized Loan Servicing, LLC v. January, 119 So. 3d 582, 586 (La. 2013).
[36] *Carter*, 892 So. 2d at 1268 (citing Plaquemines Parish Comm'n Council v. Delta Development Co., Inc., 502 So. 2d 1034, 1054–55 (La. 1987)).

5

reasonably knowable by a plaintiff, courts should look "to the record for evidence of facts within [a] plaintiff's knowledge and then [examine] the reasonableness of [the] plaintiff's inaction in light of those facts, considering [the] plaintiff's education, intelligence and the nature of defendant's conduct."[37] Even so, the Louisiana Supreme Court has cautioned that the "'discovery rule' is only to be applied in extreme circumstances."[38]

The facts of this case do not present such extreme circumstances. Plaintiff's own petition states that "[t]he causal connection between asbestos and mesothelioma was well-documented by the 1960s at the very latest."[39] Plaintiff's petition further states that her father and brother worked at Avondale,[40] and in her deposition she testified that she knew "everyone was exposed to asbestos when working at Avondale,"[41] that her uncle told her he suffered from asbestos-induced mesothelioma because of the work he did at Avondale,[42] and that she knew all of this at least several years before she filed her lawsuit.[43]

---

[37] Wells v. Zadeck, 89 So. 3d 1145, 1151 (La. 2012).
[38] Marin v. Exxon Mobil Corp., 48 So. 3d 234, 245. (La. 2010); *see Wells*, 89 So. 3d at 1154 (recognizing that the *contra non valentem* "applies only in 'extreme circumstances'").
[39] Doc. 1-1 at 9.
[40] *See* Doc. 1-1.
[41] Doc. 24-5 at 14.
[42] *See* Doc. 24-5 at 16–19.
[43] *See* Doc. 24-5. This Court recognizes that Plaintiff's uncle, Huey LeBlanc, did not in fact die from mesothelioma but instead from lymphoma. *See* Doc. 33-6. This Court also recognizes that Plaintiff initially testified during her deposition that she did not in fact know what type of cancer Huey LeBlanc died from. *See* Doc. 24-5 at 37. Neither of these facts, however, negate Plaintiff's testimony that her uncle *told her* he was diagnosed with mesothelioma and that it was caused by his exposure to asbestos at Avondale. It also is worth noting that Plaintiff testified that her cousin, Paul LeBlanc, suffered from mesothelioma caused by asbestos exposure at Avondale and that he died "two years" before she was deposed in February 2018, meaning he must have told her that information more than a year before she filed suit in June 2017. *See* Doc. 24-5 at 6.

6

Further, the undisputed evidence shows that Dolores Punch was diagnosed with malignant mesothelioma in July 2011.[44] Punch entered hospice care on August 11, 2011.[45] Plaintiff testified that she "was in charge of all her [mother's] medical records and hospital care" leading up to her mother's death.[46] Plaintiff signed her mother's hospice intake form.[47] Numerous hospice records indicate Punch's diagnosis as mesothelioma.[48] Punch died from mesothelioma four days after entering hospice care.[49] Plaintiff was with her mother when she died.[50] Several weeks later, Plaintiff received her mother's death certificate in the mail.[51] The certificate indicates Dolores Punch's cause of death as mesothelioma.[52]

Despite all this evidence, Plaintiff claims that until May 2017—when she saw an advertisement referring to asbestos-induced mesothelioma and subsequently looked for and reviewed for the first time her mother's death certificate— she did not know what asbestos was, that it caused mesothelioma, or that her mother died from mesothelioma.[53] In support, Plaintiff cites to her own testimony, the testimony of her siblings, and to evidence showing that her mother was initially diagnosed with adenocarcinoma before being diagnosed with mesothelioma.[54] Even considering the evidence in the light most favorable to Plaintiff, Plaintiff has not carried her burden to show a genuine dispute of

---

[44] *See* Docs. 1-1, 33-3 at 7.
[45] Doc. 24-4 at 7
[46] Doc. 24-5 at 2.
[47] Doc. 24-4 at 7.
[48] Doc. 24-4.
[49] *Id.*
[50] *Id.* at 61.
[51] Docs. 24-5 at 25, 33-8 at 3.
[52] Doc. 24-3.
[53] *See* Docs. 1-1, 24-5, 33.
[54] *See* Doc. 33.

7

material fact regarding what was, at the very least, reasonably knowable more than a year before she filed suit.

Years before Plaintiff filed suit, she knew much of her family had worked at Avondale, that they were exposed to asbestos there, and that such exposure could cause cancer.[55] She knew that her mother was terminally ill with cancer in 2011.[56] She attended doctor's appointments with her mother and was with her mother, her mother's physicians, and others when her mother succumbed to mesothelioma in hospice care in 2011.[57] And Plaintiff received her mother's death certificate, which stated a cause of death as mesothelioma, in the mail in 2011.[58]

To the extent Plaintiff did not know that her mother died from mesothelioma or that asbestos exposure causes the deadly cancer, such lack of knowledge can only be explained by Plaintiff's "own willfulness or neglect."[59] The cause of Dolores Punch's death was reasonably knowable to Plaintiff no later than when Punch's death certificate was in Plaintiff's possession.[60] Further, because several of Plaintiff's family members spoke with her about the connection between asbestos and mesothelioma more than a year before

---

[55] *See* Doc. 24-5. At one point during her deposition, Plaintiff admitted that she knew her uncle, Huey LeBlanc, had worked at Avondale and that he told her he was sick with mesothelioma caused by his exposure to asbestos while working there. *Id.* at 18–19.
[56] *See id.*
[57] *See* Doc. 24-4 at 61.
[58] *See* Doc. 24-5.
[59] *See* Lennie v. Exxon Mobil Corp., 251 So. 3d 637, 648 (La. App. 5 Cir. 2018) (citing Tenorio v. Exxon Mobil Corp., 170 So. 3d. 269, 275 (La. App. 5 Cir. 2015)).
[60] *See* Snavely v. Ace Pain Mgmt., LLC, 184 So. 3d 871, 875 (La. App. 3 Cir. 2016) (holding that issuance of death certificate was sufficient to provide constructive notice to plaintiff regarding cause of action related to her son's death); In re Mann v. Lawrence A. Mann & Jose C. Rodriguez, Solely in His Capacity as Trustee, 2009 WL 10702299, at *11 (W.D. Tex. Sept. 28, 2009) (holding that receipt and possession of a document, even though it was placed in a drawer and not seen for years, commenced the relevant statute of limitations period under Texas's equivalent of Louisiana's discovery rule). *See also Lennie*, 251 So. 3d at 648 (holding that diagnosis of cancer was sufficient to put a plaintiff on notice about cause of action); *Tenorio*, 170 So. 3d. at 275 (same).

she filed suit, the cause of Dolores Punch's mesothelioma also was reasonably knowable at that time.[61] Even considering the fact that Plaintiff "was a homemaker most of [her] life and never worked in industry or around chemicals including asbestos,[62] and considering the allegations that Defendant Avondale failed to warn Plaintiff or her family members about the dangers of asbestos,[63] the facts within Plaintiff's knowledge clearly establish that her wrongful death and survival action was reasonably knowable more than a year before she filed suit. As such, the discovery rule does not prevent her claims from being prescribed.

### III. Plaintiff's Claims Prescribed Under the Concealment Rule

The concealment rule of *contra non valentem* applies "where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action."[64] More specifically, at least for purposes of this suit, the rule applies when "an innocent plaintiff has been lulled into a course of inaction in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendant, or because of [the defendant's] failure to perform some legal duty whereby plaintiff has been kept in ignorance of his rights."[65] To establish *contra non valentem* by concealment under Louisiana law, a plaintiff must show:

> (1) the defendant engages in conduct which rises to the level of concealment, misrepresentation, fraud or ill practice; (2) the defendant's actions effectually prevented the plaintiff from

---

[61] *See* Doc. 24-5.
[62] Doc. 33-8.
[63] *See* Doc. 1-1.
[64] *Carter*, 892 So. 2d at 1268 (citing *Plaquemines Parish Comm'n Council*, 502 So. 2d at 1054–55).
[65] *Id.*

9

pursuing a cause of action; and (3) the plaintiff [is] reasonable in his or her inaction[66]

Examining the evidence in the light most favorable to Plaintiff, she has failed to establish that a genuine dispute of material facts exists as to whether Avondale or anyone else engaged in fraudulent concealment sufficient to prevent Plaintiff from timely pursuing her cause of action against Defendants. Even assuming as true Plaintiff's allegations that Avondale concealed the link between asbestos and mesothelioma for years, Plaintiff has failed to show *how* any such concealment would have prevented her from timely filing her claim against them. As explained above, all the information necessary for Plaintiff to bring her claim was either known or reasonably knowable by her more than a year before she filed suit. Thus, even if Avondale engaged in concealment, its actions did not prevent Plaintiff from timely filing suit, and Plaintiff was not reasonable in her inaction given the information available to her long before she filed suit. Thus, the concealment rule does not prevent Plaintiff's claims from being prescribed.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 24) is **GRANTED**. Accordingly, Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 3rd day of December, 2018.

---

[66] *Marin*, 48 So. 3d at 252.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**